[Cite as *State v. Cole-Walker*, 2021-Ohio-1507.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO. C-200038
                                           TRIAL NO.   C-19CRB-29671
    Plaintiff-Appellee,          :

 vs.                              :
                                           *O P I N I O N.*
DAMONTE COLE-WALKER,              :

    Defendant-Appellant.         :


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 30, 2021


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Scott M. Heenan,* Assistant Prosecuting Attorney*,* for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   In this appeal from a conviction for sexual imposition, the defendant's unwelcome attempts to rekindle his relationship with a former girlfriend escalated into criminal charges.  On appeal, the defendant contends that the victim's testimony lacked credibility, and, even if true, was insufficiently corroborated under R.C. 2907.06(B).  We disagree, overrule his sole assignment of error, and affirm the judgment of the trial court.

I.

{¶2}   Defendant-appellant Damonte Cole-Walker was involved in a romantic relationship with the victim, Jalin Spencer, for roughly a year before she cut ties in July of 2019.  Post-breakup communications between the two were heated, and when Ms. Spencer came to retrieve some of her possessions from Mr. Cole-Walker's apartment, a physical altercation broke out.  Ms. Spencer involved the police and eventually filed a civil protection order ("CPO") petition in Butler County (though it is unclear whether the CPO was ever served on Mr. Cole-Walker).  Even after she filed for the CPO, Ms. Spencer testified that Mr. Cole-Walker followed her to different cities, at one point taking her keys and car.  She never reported these incidents to the police, believing that the CPO—and an upcoming CPO hearing— ought to keep Mr. Cole-Walker at bay.

{¶3}   In September 2019, while working as a DoorDash delivery driver, Ms. Spencer received an order from a Buffalo Wild Wings in Colerain Township.  She parked her car across the parking lot from the restaurant, went in, and picked up her order.  When she returned, she found Mr. Cole-Walker sitting on the curb next to her car.  Ms. Spencer demanded to know what he was doing there, and he initially

professed to be picking up his own DoorDash order. The topic soon switched, however, to the looming CPO hearing. Mr. Cole-Walker now sang a different tune, insisting that he missed Ms. Spencer and loved her, and maintaining that she didn't really want to go through with the CPO proceedings. Undeterred, Ms. Spencer countered by accusing him of violating the CPO and indicating that he should not even be there. Mr. Cole-Walker professed that he did not care, then groped Ms. Spencer's right breast and buttock.

{¶4} Ms. Spencer later testified that she felt "very violated" by his touch, because he "shouldn't have even been in [her] presence in the first place." She told Mr. Cole-Walker that she would see him in court, and the two stepped into their respective vehicles and left. After completing her DoorDash order, Ms. Spencer drove to the local police station to report the incident. She spoke to several officers, including Officer Adam Wood, who took down her report and testified briefly at trial. The state charged Mr. Cole-Walker with one count of sexual imposition under R.C. 2907.06, and the case proceeded to trial.

{¶5} The testimony and arguments below hinged on two key issues: corroboration and credibility. At one point, Ms. Spencer testified that she was on the phone with a friend during the entire Buffalo Wild Wings encounter with Mr. Cole-Walker, and the friend urged her to go to the police. But this friend never materialized in court. Instead, to corroborate Ms. Spencer's story, the state presented evidence of her Butler County CPO filing, the DoorDash receipt showing that she picked up an order from the Colerain Township Buffalo Wild Wings at the time of the alleged assault, and Officer Wood's testimony.

{¶6} Mr. Cole-Walker opted not to present any testimony in his defense, instead relying on cross-examination to paint Ms. Spencer as less-than-credible and

to highlight the absence of corroboration required by R.C. 2907.06(B). The trial court disagreed, pointing out that the corroboration need not address every element of the crime charged and that the statute sets a relatively low threshold. The trial court specifically found that "listening to [Ms. Spencer's] testimony, her testimony was very credible." It convicted Mr. Cole-Walker of one count of sexual imposition, instructed him to register as a Tier 1 sex offender, and imposed a sentence of 180 days in jail. Mr. Cole-Walker now appeals, challenging the sufficiency and weight of the evidence underlying his conviction in a single assignment of error.

II.

{¶7} First, to determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, (1991), paragraph 2 of the syllabus. *See State v. Curry,* 1st Dist. Hamilton No. C-190107, 2020-Ohio-1230, ¶ 11. Whether the evidence is sufficient to sustain a verdict poses a question of law, which we review de novo. *State v. Jackson,* 1st Dist. Hamilton Nos. C-180159 and C-180209, 2020-Ohio-80, ¶ 11. To obtain a sexual-imposition conviction under R.C. 2907.06(A)(1), the state had to prove that Mr. Cole-Walker "[h]ad sexual contact with another * * * know[ing] that the sexual contact [wa]s offensive to the other person * * * or [wa]s reckless in that regard." *See* R.C. 2907.06(A)(1).

{¶8} Mr. Cole-Walker contends that the trial court erred in its finding that the state presented sufficient corroboration to support a sexual imposition offense. The requirement at issue stems from R.C. 2907.06(B): "No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other

4

evidence." The Ohio Supreme Court interprets this language to impose "a threshold inquiry" that the state must satisfy in addition to proving the elements of an R.C. 2907.06 offense. *State v. Economo*, 76 Ohio St.3d 56, 60, 666 N.E.2d 225 (1996). As the trial court in this case properly recognized, "[t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.*; *see State v. Stacy,* 1st Dist. Hamilton No. C-150730, 2016-Ohio-7977, ¶ 6.

{¶9}  Without an eye-witnesses to the incident in question, and without any testimony from Ms. Spencer's friend on the phone, the state resorted to other measures to corroborate her story.  It tendered a copy of the CPO presented in Butler County, a DoorDash receipt confirming that Ms. Spencer picked up an order from the Colerain Township Buffalo Wild Wings at the relevant date and time, and the testimony of Officer Wood, who took down her report later that evening.  Ms. Spencer's testimony also aligned with evidence offered by the defense, including contentious text messages between herself and Mr. Cole-Walker (confirming that she did not wish to see him, and he knew it) and Officer Wood's report.

{¶10}  Ohio case law sets a low bar for R.C. 2907.06(B) corroboration. In *Economo*, for example, the Ohio Supreme Court found sufficient corroboration of a victim's testimony based on medical records, testimony that the victim appeared "scared and upset," and the victim's self-reporting to her friend. *Economo,* 76 Ohio St.3d at 60, 666 N.E.2d 225.  In *State v. Stacy,* this court found a combination of the victim's self-reporting, the defendant's admission that he was with the victim at the relevant time, and testimony that the victim "appeared as if something had happened

to her" sufficient to satisfy the corroboration requirement. *Stacy,* 1st Dist. Hamilton No. C-150730, 2016-Ohio-7977, at ¶ 7. "Corroborating evidence does not necessarily have to be in the form of eyewitness testimony." *State v. Manolakas*, 8th Dist. Cuyahoga No. 86815, 2006-Ohio-4263, ¶ 11. Instead, "[c]orroborating evidence is that which supplements evidence that has already been given and which tends to strengthen or confirm it." *Id.* "This is an easily met burden." *Id.*

{¶11} We find that the evidence offered by the state in this case suffices to satisfy the corroboration "threshold" in R.C. 2907.06(B). *See Economo* at 60. The combination of the DoorDash receipt, CPO filing, and Officer Woods's testimony conclusively established: 1) Ms. Spencer's presence at the location where she alleged Mr. Cole-Walker groped her, at the time she claimed that the incident occurred; 2) Ms. Spencer's communication to Mr. Cole-Walker, through the CPO and otherwise, that their relationship was over and any further sexual contact would be offensive to her; and 3) Ms. Spencer's prompt reporting of the incident to police. *See id.* at 59 (" '[R]easonably prompt reporting of the incident to one's family, friends or police is considered corroboration here.' "), quoting *Fitzgerald v. United States,* 443 A.2d 1295, 1302 (D.C.1982). Of course, this evidence was not independently sufficient to sustain Mr. Cole-Walker's conviction. *See id.* at 60. As he insists in his appellate brief, it does not directly "evince the sexual contact" at the heart of this case. But corroborating evidence "need not go to every essential element of the crime charged." *Id.* Instead, the state need only present "[s]light circumstances or evidence which tend[] to support the victim's testimony"—and it certainly did so here. *Id.*

{¶12} Mr. Cole-Walker musters no sufficiency challenge to the remaining elements of his R.C. 2907.06(A)(1) offense, essentially conceding that Ms. Spencer's

testimony—if believed and corroborated—was sufficient to prove that he groped her in a knowingly or recklessly offensive manner. *See* R.C. 2907.06(A)(1). He admits that "[g]enerally, the act of reporting a claim of sexual imposition to the police may constitute sufficient collaboration," but insists that Ms. Spencer's report was "lacking in credibility" due to the absence of any testimony that she appeared upset or scared when she spoke with police.

{¶13} On a sufficiency challenge, we generally defer to the credibility determinations of the trial court so long as those determinations are reasonable. *See State v. Sipple*, 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319, ¶ 6 (a sufficiency challenge "is a question of law for the court to determine, the court is not to weigh the evidence."). "The trier of fact may believe all, part or none of [a] witness's testimony. And when evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." (Internal citation omitted.) *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20. Here, the trial court deemed Ms. Spencer a credible witness after listening to her testimony. The trial court was best-positioned to evaluate her credibility, and it certainly rejected Mr. Cole-Walker's implication that she made a false report. *See State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16 ("The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented.").

{¶14} Finally, although we acknowledge that other cases concerning R.C. 2907.06(B) have emphasized the demeanor of the victim as potential corroborative evidence, we decline Mr. Cole-Walker's invitation to *require* such testimony to satisfy the R.C. 2907.06(B) threshold. *See, e.g., Economo,* 76 Ohio St.3d at 60, 666 N.E.2d 225 (victim appeared "scared and upset" and "on the verge of crying"); *Stacy,*

7

1st Dist. Hamilton No. C-150730, 2016-Ohio-7977, at ¶ 7 (victim was "crying and upset"). Certainly, testimony that the victim appeared upset or uncomfortable when recounting his or her experience can help corroborate a claim of sexual imposition. But to say that a victim *must* appear visibly disturbed to constitute corroboration implies the (false) conclusion that survivors of sexual assault must always react in a stereotypical, outwardly discernible manner in order to be believed. We are loathe to draw this type of distinction, and hold that the absence of testimony about Ms. Spencer's demeanor when she reported her experience does not undermine the evidence of corroboration marshalled by the state here.

{¶15} Because we find that Ms. Spencer's testimony was adequately corroborated under R.C. 2907.06(B) and was itself sufficient to support his conviction under R.C. 2907.06(A)(1), we overrule the sufficiency prong of Mr. Cole-Walker's first assignment of error.

### III.

{¶16} Next, when reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Unlike our review of a sufficiency challenge, review of a manifest weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. 190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397. However, we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *Sipple,* 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319,

¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶17} Mr. Cole-Walker argues that his conviction stands against the manifest weight of the evidence because Ms. Spencer's testimony was "substantially lacking in credibility." He claims that she harbored "a clear motive to fabricate an event that would result in an arrest," and "the real reason that [Ms. Spencer] filed a CPO against [him] was spite." In particular, he highlights her purported fear that he might "tase" her as he approached in the dark parking lot, emphasizing that Ms. Spencer had no reason to believe that he possessed a taser.

{¶18} After independently reviewing the record, we decline to disturb the trial court's determination that Ms. Spencer was a credible witness. Her testimony was detailed and wholly consistent across direct and cross examination. The version of events she recounted on the stand matched what she told police in her initial report; she presented meaningful corroborating evidence of her account; and her stray comment expressing concern about a physical attack by Mr. Cole-Walker was not so hyperbolic as to undercut the rest of her narrative. Mr. Cole-Walker presented no alternate narrative of events below. He asks us to disbelieve Ms. Spencer solely based on her supposed bias against him. But the bias of a witness—even confirmed—does not require us to wholly disregard her testimony, and the transcripts reveal no other reason to question the veracity of Ms. Spencer's story.

{¶19} In conclusion, this is far from the "exceptional case[] in which the evidence weighs heavily against the conviction." *See Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. We hold that Mr. Cole-Walker's conviction was not against the manifest weight of the evidence, and we overrule his assignment of error in full. The judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **SUNDERMANN, J.,** concur.

J. HOWARD SUNDERMANN, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its entry on the date of the release of this opinion.